```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

WILLIAM R. BERNSTEIN              :
                                  :
                                  :
v.                                :    CIV. NO. 3:12CV311 (WWE)
                                  :
MAFCOTE, INC.                     :
                                  :
```

RULING ON DEFENDANT'S MOTION TO COMPEL [DOC. #94]

Pending before the Court is defendant Mafcote, Inc.'s motion to compel plaintiff William Bernstein to comply with defendant's discovery requests. Plaintiff opposes defendant's motion. [Doc. #103]. On June 25, 2014, the Court held a discovery conference on the record, addressing the issues raised in the pending motion. For the reasons articulated below, the Court **GRANTS IN PART AND DENIES IN PART** defendant's motion to compel [Doc. #94].

I.  **Background**

Plaintiff brings this action against his former employer Mafcote, Inc., claiming disability discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. §12112(a), and the Connecticut Fair Employment Practices Act, Connecticut General Statutes §46a-60(a)(1). [Am. Compl., Doc. #55]. Plaintiff also alleges breach of the implied covenant of good faith and fair dealing. [Id.].[1]

The following facts are derived from the allegations in the amended complaint. Plaintiff was working for defendant as Vice

---
[1] The Court notes for purposes of this ruling that defendant has yet to file an answer or affirmative defenses to the amended complaint. Defendant's motion to dismiss count 5 of the amended complaint is pending. [Doc. #64].

President of Finance when he was diagnosed with lung cancer. Plaintiff alleges that shortly after disclosing this diagnosis to defendant's CEO, Steven Schulman, Mr. Schulman began a campaign to harass plaintiff and end his employment. Plaintiff underwent surgery on January 7, 2011 to remove the cancerous growth. Plaintiff alleges that "[d]ays before" this operation, Mr. Schulman, and his human resources manager, Jennifer Calderon, began to consult an attorney regarding plaintiff's employment. Defendant ultimately terminated plaintiff on the allegedly pretextual grounds that he was overpaid.

## II.   Legal Standard

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery. See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991); Morse/Diesel, Inc. v. Fidelity & Deposit Co., 122 F.R.D. 447, 449 (S.D.N.Y. 1988). "The party resisting discovery bears the burden of showing why discovery should be denied." Cole v. Towers Perrin Forster & Crosby, 256

2

F.R.D. 79, 80 (D. Conn. 2009).

### III. Discussion

#### 1. Defendant's second set of discovery requests

Defendant seeks to compel plaintiff's responses to its second set of discovery requests, which are comprised of two (2) interrogatories and one request for production. Since the motion to compel was filed, plaintiff has provided responses to both the interrogatories and the request for production. [See Doc. #103-1]. As stated at the June 25, 2014 discovery conference, the Court finds plaintiff has answered the interrogatories fairly and fully. Accordingly, defendant's motion to compel plaintiff's responses to its second set of discovery requests is **MOOT**. Nevertheless, in light of plaintiff's response to the request for the production,[2] "Subject to and without waiving his objection, any and all documents in plaintiff's possession have already been produced[,]" the Court will require that within fourteen (14) days of this ruling, plaintiff provide a sworn statement that after a diligent search, all responsive documents have been produced. See Napolitano v. Synthes USA, LLC, 297 F.R.D. 194, 200 (D. Conn 2014) (citations omitted) ("When a party claims that the requested documents have already been produced, it must indicate that fact under oath in response to the request.").

#### 2. Defendant's Discovery Requests Relating to Damages

Defendant next seeks to compel responses to the following

---

[2] The request for production seeks, "all documents and communications by or between Genn A. Duhl, Esq. and any present or former employee, officer or representative of Defendant." [Doc. #94-4].

3

requests for production relating to damages:[3]

> Request No. 8: Produce all documents that reflect any income, wages or other compensation earned or received by you from January 1, 2007, up to the time of trial. This request includes, but is not limited to, all federal and state income tax returns (including all statements, schedules, attachments and amendments thereto) filed and/or prepared by you or on your behalf since calendar year 2007, and for each year thereafter up to the time of trial.
>
> Request No. 9: Produce all documents relating to any claim by Plaintiff for unemployment compensation benefits since January 1, 2010.
>
> Request No. 42: Produce all documents supporting or otherwise relating to your claims for actual damages, liquidated damages, punitive damages, compensatory damages and double damages as alleged in the prayer for relief.

Defendant states that no responsive documents were produced in response to these requests, and that the documents requested are material to its defense of failure to mitigate damages and to assess the merits of plaintiff's damages claims. Defendant further claims that information predating plaintiff's termination is relevant to the issue of front pay, and plaintiff's earning capacity.

Plaintiff only objected to Request No. 8 "on the grounds that it is overbroad. His damages are measured from the date of termination of his employment, not from any prior date… defendant has no need of Bernstein's tax returns to assess his economic damages, but rather only W-2s and 1099s reflecting any income he has earned since his termination…" [Doc. #94-2, 10].

---

[3] Plaintiff states in its opposition to defendant's motion to compel that he "has provided a painstakingly detailed, 81-page response to the defendant's First Set of Interrogatories and Requests for Production and over 13,000 discovery documents in response."

4

In his opposition to the motion to compel, plaintiff states he has provided an expert analysis of his damages along with supporting documentation. Plaintiff also states that he has not worked since he was terminated, and therefore there are no W-2s or 1099s to produce. Plaintiff claims that his social security and unemployment benefits are irrelevant, but is willing to produce such documentation if the Court deems it relevant.

The Court **GRANTS in part and DENIES** in part defendant's motion to compel production regarding damages. As discussed at the discovery conference, plaintiff has agreed to produce any report of income, including any W-2s and 1099s, relied on by his expert in her damages analysis. Plaintiff will supplement his production within fourteen (14) days of this Ruling.

The Court will not require plaintiff to produce his tax returns on the current record. Generally, plaintiff's tax returns are discoverable if: "(1) it clearly appears they are relevant to the subject matter of the action or to the issues raised thereunder, and (2) there is a compelling need therefore because the information contained therein is not otherwise readily obtainable." Gattengo v. PriceWaterhouseCoopers, Inc., 205 F.R.D. 70, 72 (D. Conn. 2001) (compiling cases).  Although plaintiff's tax returns are plainly relevant to the subject matter of the present action, defendant has not demonstrated a compelling need for copies of plaintiff's tax returns. Indeed, defendant has not shown that relevant information is not otherwise readily obtainable through other documents or plaintiff's deposition testimony. See Sadofsky v. Fiesta

5

Products, LLC, 252 F.R.D. 143, 153 (E.D.N.Y. 2008) (citation omitted) ("Depositions have also been held to constitute a less intrusive source for obtaining information [sought from tax returns]."); see also Gates v. Wilkinson, No. 03-CV-763 GLS/DRH, 2005 WL 758793, at *2 (N.D.N.Y. April 5, 2005)("[T]he fact that the information sought by plaintiffs may be more easily accessible from tax returns than from depositions or other financial documents does not, without more, constitute a compelling need."). If defendant is not satisfied with plaintiff's sworn deposition testimony, and if the information sought is not otherwise available through plaintiff's other financial records, defendant may renew his motion to compel the production of plaintiff's tax returns.

The Court will also require plaintiff to produce information relating to his receipt of social security and unemployment benefits in light of the broad concept of relevancy. The Court will also require plaintiff to produce documents responsive to Request No. 42, with the exception of tax returns. In responding to these requests, plaintiff shall provide a sworn written statement that all documents have been produced after a diligent search.

To the extent that defendant seeks "a written explanation of how the figures set forth in Plaintiff's Damages Analysis were calculated," this is best reserved for expert discovery and the Court will not require plaintiff to produce such an explanation at this stage of discovery.

### *3. Defendant's discovery requests relating to retaliation claim*

Defendant seeks to compel a "full[] and fair[]" response to Interrogatory 11, which requests that plaintiff "Identify and describe all protected activity you claim to have engaged in, including, but not limited to, the 'opposition to illegal conduct' alleged in paragraph 33 of the Complaint." [Doc. #94-2, 12]. Plaintiff objected to this interrogatory "in that the protected activity he engaged in is already identified in his Complaint. The interrogatory is therefore harassing and argumentative. Subject to and without waiving the objection, Bernstein responds: Bernstein incorporates by reference his response to interrogatory 5." [Id. at 13]. Defendant claims that it is unclear from the complaint and the response to interrogatory 5[4] the protected activity in which plaintiff allegedly partook. The Court **GRANTS in part** this request. Within fourteen (14) days of this ruling, and as further discussed at the discovery conference, plaintiff will amend his response to this interrogatory to state with specificity the portions of his response to interrogatory 5 that are responsive to interrogatory 11.

Defendant also seeks to compel production for Request No. 31, which seeks the production of "all documents supporting the allegation contained in Paragraph 33 of the Complaint, that Defendant 'harassed and discriminated and retaliated against

---

[4] Interrogatory 5 seeks plaintiff to "Identify and describe with particularity the action(s) and/or conduct (verbal or physical) by Defendant or any representative thereof that you claim constitutes discrimination or retaliation against you as claimed in Paragraphs 33, 35 and 38 of the Complaint." Interrogatory 5 also has 8 subparts delineating the details sought in response to this interrogatory. [Doc. #94-4].

[Plaintiff] on the basis of… [Plaintiff's] opposition to illegal conduct." [Doc. #94-2, 13]. Plaintiff did not object, and responded that, "All responsive, non-privileged documents which exist and are in the plaintiff's possession and which can be located without undue burden or expense will be produced." [Id. at 13]. Defendant asserts that it is not clear what documents produced by plaintiff, if any, are responsive to this request. The Court **GRANTS** defendant's motion to compel to the extent that plaintiff shall, within fourteen (14) days of this ruling, amend his answer to indicate by bates numbers the responsive documents already produced. Plaintiff will also provide a sworn written statement that after a diligent search, all responsive documents have been produced.

### 4. *Defendant's requests relating to plaintiff's medical records*

At the June 25, 2014 discovery conference, the parties represented that this issue has been resolved. Therefore, defendant's motion to compel with respect to this issue is **DENIED** as **MOOT**.

### 5. *First Set of Discovery Requests - Interrogatory No. 12*

Interrogatory No. 12 requests plaintiff to "[s]tate whether at any time during your employment with Defendant, you engaged in sexual conduct with any employee of Defendant. If your response is in the affirmative, identify the employee(s) with whom you engaged in such sexual conduct." [Doc. #94-2, 17]. Plaintiff objected to the interrogatory on the grounds, inter alia, that it is argumentative and harassing, that it is not reasonably calculated to lead to the discovery of admissible

8

evidence, and that "sexual conduct" is not defined.[5]

Defendant maintains that Interrogatory No. 12 is reasonably calculated to lead to the discovery of admissible evidence concerning its defense to plaintiff's claim of wrongful termination. Specifically, defendant claims plaintiff's alleged sexual relationship with one or more employees constitutes after-acquired evidence supporting plaintiff's employment termination. Defendant moreover asserts that it has a "good faith basis" for its belief that plaintiff engaged in sexual conduct with at least one subordinate employee, including first hand conversations with that employee and a statement signed under penalty of perjury. Plaintiff argues that defendant has not produced any evidence that consensual office affairs were terminable offenses, nor was plaintiff terminated for anything relating to sexual misconduct. Simply, plaintiff claims the after-acquired evidence doctrine does not apply. Defendant replies that it has produced a number of documents "tending to show" that plaintiff engaged in sexually harassing conduct with subordinate employees and that such conduct was not consensual.

"The after-acquired evidence defense recognized by the Supreme Court in McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 115 S. Ct. 879 (1995), provides that an employee's relief can be limited by evidence of wrong-doing discovered after his or her termination that would have provided a legitimate basis for such termination." Chamberlain v.

---

[5] Defense counsel later defined "sexual conduct" as "sexual contact between two or more persons including, but not limited to, kissing on the mouth and sexual intercourse." [Doc. #94-5].

9

Farmington Savings Bank, Civil No. 3:06CV01437(CFD), 2007 WL 2786421, at *2 (D. Conn. Sept. 25, 2007); see also Adonna v. Parker Hannifin Corp., No. 3:13cv1616(RNC), 2014 WL 788946, at *2 (D. Conn. Feb. 25, 2014) (same). Nevertheless, although the Supreme Court recognized this defense, it also "cautioned against the potential for abuse of the discovery process by employers seeking to limit their liability through an after acquired evidence defense, noting the ability of the Court to curb such abuses through the Federal Rules of Civil Procedure." Chamberlain, 2007 WL 2786421, at *2 (citation omitted). Indeed, "[s]everal lower courts have relied on McKennon in holding that the after-acquired evidence defense cannot be used to pursue discovery in the absence of some basis for believing that after-acquired evidence of wrongdoing will be revealed." Id. (compiling cases).

At the request of the Court, defense counsel provided a copy of defendant's "Harassment-Free and Discrimination-Free Workplace Policy" (Bates Nos. 000443-45) (hereinafter the "Harassment Policy"), Affidavit of Simona Stroi (Bates No. 366), and communications by Ms. Stroi (produced in native format). In response, plaintiff submitted via letter brief dated July 1, 2014, other documents authored by Ms. Stroi with respect to the allegations of sexual harassment.

The Harassment Policy defines sexual harassment as:

> […]including unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when:
> - Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's

> employment;
> - Submission to or rejection of such conduct is used as the basis for decisions affecting an individual's employment; or
> - Such conduct has the purpose or effect of creating an intimidating, hostile or offensive working environment.

The Harassment Policy further states that sexual harassment may include actions such as,

> (1) sex-oriented verbal kidding, teasing or jokes; (2) offensive or repeated sexual flirtations, advances or propositions; (3) verbal or physical abuse of a sexual nature; (4) graphic or degrading comments about an individual or his or her appearance; (5) the display of sexually suggestive objects, pictures or written materials; (6) subtle pressure for sexual activity; and (7) physical contact such as patting, hugging, pinching or brushing against another's body.

The Harassment Policy notes that defendant "will not tolerate any form of unlawful harassment" and that all reports of harassment "will be fully investigated and, if found to have merit, will result in whatever disciplinary action against the offender may be warranted, up to and including dismissal from employment."

According to her affidavit dated April 18, 2011, Simona Stroi served as defendant's accounts receivable manager. She regularly reported to plaintiff, who was her supervisor. Ms. Stroi's affidavit sets forth numerous paragraphs detailing conversations in which plaintiff recounted various discussions with other Mafcote employees that led him to believe that he would be fired. Ms. Stroi further attests that,

> Mr. Bernstein told me that he believed that Mr. Schulman[6] was trying to replace him and that if he was fired, I should immediately resign. Mr. Bernstein's

---

[6] Steven Schulman is the president of Mafcote, Inc.

> stated belief was that Mr. Schulman could not afford to lose both persons in charge of the accounts receivables at the same time and, therefore, Mr. Schulman would feel compelled to retain Mr. Bernstein. I felt pressured to agree to Mr. Bernstein's request.
>
> I feel threatened by Mr. Bernstein's telling me about the foregoing information and especially about his request that I should quit if he were let go.

The Court notes that there is nothing in Ms. Stroi's affidavit that suggests she was sexually harassed by plaintiff. Defendant also submitted an email from Ms. Stroi to Steven Schulman and Jennifer Calderon. The first of these emails, dated November 10, 2010 and bearing a time stamp of 9:59 A.M., states,

> I am bullied, humiliated, mistreated over the phone everyday (sic) in work by William. He hangs up on my (sic) while I am speaking. If I call for guidance or help, he says he is busy and does not have time. If I want to call back he says "Do this because I say so" or "this is the end of that." I am badgered, under constant tension and pressure every day. I am afraid of William, please keep this confidential.

A second email from Jennifer Calderon to Steven Schulman reflects a conversation between Ms. Calderon and Ms. Stroi where the former was "crying on the phone about how she's afraid [plaintiff] will fire her when she's done nothing wrong. She said the last 4-5 months have been unbearable… She said he is not friendly like he used to be. She thinks William may be edgy due to his upcoming surgery…" These emails also do not allege or otherwise reference sexual harassment.

In contrast, plaintiff's counsel submitted several emails between plaintiff and Ms. Stroi from January and September 2011 wherein the relationship between the two seemed, if not friendly, at least cordial. For example, in one email to

plaintiff, Ms. Stroi writes, "How are you today? It is not fun working with sharks in your absence. Just get well. Nothing to worry about. You are missed." [Pl. July 1, 2014 Ltr., Ex. 3]. In another email dated September 2, 2011, Ms. Stroi seeks plaintiff's advice about taking a job with Mafcote in Norwalk. [Id. at Ex. 2]. Plaintiff also submitted an email string between Ms. Stroi and Mr. Schulman from November 2012[7] with the subject "assistance." One of these emails dated November 4, 2012 states,

> If Bernstein makes threats against you, implied physical or about your employment status as you said he did, or in some other way threaten you, [an attorney] has been instructed to assist you if you call him. His assistance will be at our expense. I do this because no one deserves to be abused, before, during or after employment. This is especially true for you, who as you said were in reality doing most all of his work with your team, while he used and abused you for whatever reasons. We do not want to involve you, and I know how embassering (sic) it might be, but if we need you, I hope that you will [email cuts off].

[Pl. July 1, 2014 Ltr., Ex. 4]. Ms. Stroi responded in pertinent part, "Regarding testifying I don't want to disppoint (sic) you and get your hopes high, I was only used and manipulated like a child, nothing was done against my will." [Id.]. To this, Mr. Schulman replied,

> First, you have a lot to offer in detail about Will's role besides the sex situation […] Further you have told me that the sexual relationship during his entire visit to Romania while not informing you that he was married, and he was a much more experienced person, was a senior manager, and dealt in person with all executive management while you had to rely almost exclusively on his evaluation, make his actions all the worse. I understand that it was consensual. But his actions were very wrong.

[Id.]. The most recent email from Ms. Stroi to Mr. Schulman,

---

[7] Plaintiff filed the complaint on March 2, 2012.

13

dated March 13, 2013, states in pertinent part, "Please tell me you won. Please tell me William got what he deserved, which is nothing."

Reading the totality of the documents submitted by counsel, it is not clear whether plaintiff's alleged conduct constitutes a terminable offense under the Harassment Policy. Indeed, the relationship between Mr. Bernstein and Ms. Stroi appears to have been consensual, as admitted in the 2012 emails between Ms. Stroi and Mr. Schulman. Although certain pressures may be implicated in light of a workplace relationship, there is no evidence before the Court that plaintiff sexually harassed Ms. Stroi, as that term is defined in the Harassment Policy. Moreover, with respect to Ms. Stroi's affidavit and complaints made to the defendant, nothing references harassment of a sexual nature. Indeed, it appears Ms. Stroi complained only of plaintiff's disposition and treatment of her in general, versus that plaintiff sexually harassed her or otherwise offered a quid pro quo with respect to her employment.  Quite frankly, on the current record it does not appear that an answer to Interrogatory 12 will necessarily reveal after-acquired evidence of wrongdoing.

Accordingly, on the current record, the Court **DENIES** defendant's motion to compel with respect to Interrogatory 12. However, the Court will permit defense counsel to inquire at plaintiff's deposition regarding the nature of plaintiff's relationship with Ms. Stroi. If defense counsel elicits testimony in further support of the allegations of sexual

harassment, then defendant may re-file the motion to compel with respect to Interrogatory 12.

### 6. *First Set of Discovery Requests - Request No. 1*

Request No. 1 seeks the production of "all documents or tangible things (including tape recordings) identified in any of the above interrogatory responses, or referred to or relied upon by you or by any person who assisted you in preparing your answer (or who supplied you with information to prepare your answer) to each of the foregoing interrogatories." [Doc. #94-2, 18]. Plaintiff did not object and responded, "All responsive, non-privileged documents which can be located without undue burden or expense will be produced." [Id.]. Defendant argues that the interrogatory responses contained numerous files contained on a CD, but that plaintiff has refused or otherwise failed to produce the subject CD. Plaintiff responds that the CD was produced "months ago" and provides an affidavit of a paralegal attesting to such. At the discovery conference, defendant stated it does not have a copy of the subject CD. Plaintiff will make an additional copy of the subject CD and produce it to defendant within fourteen (14) days of this ruling.

### 7. *First Set of Discovery Requests – Request No. 5*

Request No. 8 seeks production of "all written or recorded statements by you as a party or witness in any civil action, arbitration, criminal proceeding or administrative action. This request includes but is not limited to deposition transcripts, affidavits, statements, pleadings, decisions, and findings of

15

fact." [Doc. #94-2, 19]. Plaintiff asserted the following objection and response:

> Plaintiff objects to Request 5 on the grounds that it is overbroad, not limited in temporal scope, and is not reasonably calculated to lead to the discovery of admissible evidence relating to the claims or defenses in this case. Subject to and without waiving the objection, Bernstein responds: Bernstein will produce the transcript of his alimony proceeding. He is not aware of any other recorded testimony other than at the Connecticut Department of Labor which is already in the defendant's possession.

Defendant seeks an order compelling plaintiff to comply with this request by producing, for the period January 1, 2009 through the present: (1) a list naming any civil action, arbitration, criminal proceeding, or administrative action wherein plaintiff has given a written or recorded statement as a party or witness; and (2) any and all filings and statements submitted by Plaintiff or on his behalf in the Florida marital dissolution action in which Plaintiff is the defendant. Plaintiff responds that he knows of no other statements or transcripts other than that given before the Department of Labor.

The Court **DENIES** this request in light of plaintiff's counsel's representations at the discovery conference that he would confirm with his client that no other sworn statements exist in the alimony proceeding. Once counsel does so, and within fourteen (14) days of this ruling, plaintiff will amend his response to this request and provide a sworn written statement that despite a diligent search, all responsive documents have been produced or none are in his possession,

custody or control.

### 8. Discovery Requests Relating to documents, recordings, and/or communications relating to the case.

Defendant next seeks to compel "full[] and fair[]" responses to Requests 4, 12, 13, 32- 37 and 44 of its first set of discovery requests, all of which relate to documents, recordings, and/or communications about the subject matter of this case. Defendant "has reason to believe Plaintiff has withheld from discovery or otherwise failed to disclose" documents that are responsive to these requests. Plaintiff did not object to any of these requests.

As to requests 4, 12, and 13, plaintiff responded, "All responsive, non-privileged documents which can be located without undue burden or expense will be produced." As to requests 32 – 37 and 44, plaintiff responded, "All responsive, non-privileged documents which exist and are in the plaintiff's possession and which can be located without undue burden or expense will be produced." Plaintiff further states that neither counsel nor plaintiff is in possession of any "recordings."

As discussed at the discovery conference, plaintiff's counsel will inquire as to plaintiff's search of his personal email account for responsive documents. The Court will require plaintiff, within fourteen (14) days of this ruling to provide a sworn statement in response to each of the forgoing requests that after a diligent search, all responsive documents have been produced and/or that none have been located.

Defendant also seeks reimbursement for its costs and fees

for preparing the motion to compel. The Court declines to make such an award at this time.

## IV. Conclusion

For the reasons stated, defendant's motion to compel [Doc. #94] is **GRANTED IN PART AND DENIED IN PART**.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 21st day of July 2014.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE