UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM R. BERNSTEIN :
:
:
v. : CIV. NO. 3:12CV311 (WWE)
:
MAFCOTE, INC. :
:

RULING ON PLAINTIFF'S MOTION TO QUASH
THIRD PARTY SUBPOENA [DOC. #95]

Plaintiff William Bernstein moves pursuant to Federal Rule of Civil Procedure 45(c)(30(A)(iii) to quash a third-party subpoena issued by defendant Mafcote, Inc. to plaintiff's former employer, Deloitte f/k/a Deloitte & Touche ("Deloitte"). [Doc. #95]. Plaintiff also seeks an award of attorneys' fees incurred for bringing this motion. [Id.] Defendant opposes plaintiff's motion. [Doc. #86].[1] On June 25, 2014, the Court held a discovery conference on the record, addressing the issues raised in the pending motion. For the reasons articulated below, the Court **GRANTS** plaintiff's motion to quash. [Doc. #95].

## I. Background

Plaintiff brings this action against his former employer Mafcote, Inc. alleging disability discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. §12112(a), and the Connecticut Fair Employment Practices Act, Connecticut General Statutes §46a-60(a)(1). [Am. Compl., Doc. #55]. Plaintiff also alleges breach of the implied covenant of good

[1] Plaintiff filed a reply to defendant's opposition on June 20, 2014. [Doc. #113].

faith and fair dealing. [Id.].[2]

The following facts are derived from the allegations in the Amended Complaint. Plaintiff was working for defendant as Vice President of Finance when he was diagnosed with lung cancer. Plaintiff alleges that shortly after disclosing this diagnosis to defendant's CEO, Steven Schulman, Mr. Schulman began a campaign to harass plaintiff and end his employment. Plaintiff underwent surgery on January 7, 2011, to remove the cancerous growth. Plaintiff alleges that "[d]ays before" this operation, Mr. Schulman and his human resources manager, Jennifer Calderon, began to consult an attorney regarding plaintiff's employment. Defendant ultimately terminated plaintiff's employment on the allegedly pretextual grounds that he was overpaid.

## II. Legal Standard

Parties may obtain discovery regarding any non-privileged matter that is relevant to the subject matter involved in the pending litigation. Fed. R. Civ. P. 26(b)(1). The information sought need not be admissible at trial as long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery. See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991); Morse/Diesel, Inc. v. Fidelity & Deposit Co., 122

[2] The Court notes for purposes of this ruling that defendant has yet to file an answer or affirmative defenses to the amended complaint. Defendant's motion to dismiss count five of the amended complaint is pending. [Doc. #60]. Although no longer operative, defendant alleges an after-acquired evidence defense to the initial complaint.

F.R.D. 447, 449 (S.D.N.Y. 1988). "The party resisting discovery bears the burden of showing why discovery should be denied." Cole v. Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009).

"Pursuant to Rule 45, any party may serve a subpoena commanding a nonparty 'to attend and testify' or to 'produce designated documents.'" Weinstein v. University of Connecticut, Civ. No. 3:11CV1906(WWE), 2012 WL 3443340, at *2 (D. Conn. Aug. 15, 2012) (quoting Fed. R. Civ. P. 45(a)(1)(A)(iii)). Rule 45 subpoenas are subject to the relevance requirements set forth in Rule 26(b). See Fed. R. Civ. P. 45 Advisory Committee Notes to 1970 Amendment ("the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules"). Upon timely motion, a Court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv).

**III. Discussion**

On April 29, 2014, defendant issued a subpoena to Deloitte, seeking "Any and all documents, correspondence, memoranda or records of communication maintained by [Deloitte] concerning, referring or relating to Deloitte's employment of William R. Bernstein ('Bernstein') in Stamford, CT, including, but not limited to, Bernstein's employee personnel file." [Doc. #95-2]. Plaintiff argues that the subpoena is facially overbroad and constitutes an impermissible fishing expedition. Plaintiff

further argues that defendant cannot proffer the relevancy of the records sought to the claims and defenses in this case. Defendant argues in response, inter alia, that plaintiff has failed to meet his burden to quash the subpoena and that the subpoena seeks documents that are relevant to plaintiff's claims and defendant's defense thereof, including a "potential" after-acquired evidence defense. [Doc. #110, 3].[3]

As an initial matter, the Court finds that the subpoena in its current form is facially overbroad. For example, as phrased, the subpoena potentially encompasses confidential information, such as health insurance applications or beneficiary designations, which are completely irrelevant to the pending litigation. See, e.g., Guercia v. Equinox Holdings, Inc., No. 11 Civ. 6775, 2013 WL 2156496, at *6 (S.D.N.Y. May 20, 2013) (noting that earnings and benefit information from former employer was not relevant to establishing plaintiff's level of industry experience, or whether she lied on bankruptcy affidavit).

[3] The parties do not appear to dispute whether plaintiff has standing to move to quash the subpoena. "Ordinarily, a party does not have standing to move to quash a subpoena served on a third party. Rather, only the person or entity to whom a subpoena is directed has standing to file a motion to quash." Weinstein v. University of Connecticut, Civ. No. 3:11CV1906(WWE), 2012 WL 3443340, at *2 (D. Conn. Aug. 15, 2012)(citing Jacobs v. Connecticut Cmty. Technical Coll., 258 F.R.D. 192, 194-95 (D. Conn. 2009) (citations omitted); 9a Federal Practice and Procedure § 2463.1 ("A motion to quash, or for a protective order, should be made by the person from whom the documents, things or electronically stored information are requested.")). Numerous courts, including this one, "have held that a party lacks standing to challenge a subpoena absent a showing that the objecting party has a personal right or privilege regarding the subject matter of the subpoena." Weinstein, 2012 WL 3443340, at *2 (quoting 9a Federal Practice and Procedure §2463.1; compiling cases). Here, "[t]he plaintiff clearly has a personal right with respect to the information contained in his employment records," Chamberlain v. Farmington Savings Bank, Civil No. 3:06CV01437(CFD), 2007 WL 2786421, at *1 (D. Conn. Sept. 25, 2007), and therefore has standing to challenge the third-party subpoena.

In anticipation of this finding, defendant narrows its requests to the following documents, presumably located in plaintiff's personnel file: (1) plaintiff's resume(s) and job application(s) submitted to Deloitte; (2) documents relating to plaintiff's job performance, including evaluations and/or appraisals; (3) documents relating to plaintiff's compensation/wages; (4) complaints, grievances, charges and/or lawsuits filed by plaintiff; and (5) documentation reflecting the reasons for plaintiff's employment separation. [Doc. #110, 4-5].

A. After-acquired evidence defense

Aside from arguing the relevancy of each category of document sought, defendant submits that it "expects that the subpoenaed documents will assist it in determining whether Plaintiff was untruthful in his application for employment with Mafcote and/or events giving rise to his separation of employment with Deloitte, and thus whether the after-acquired evidence doctrine applies." [Id. at 8]. Defendant claims that its request for documents is "substantiated" by plaintiff's dishonest conduct throughout the course of this litigation.[4]

"The after-acquired evidence defense recognized by the Supreme Court in McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 115 S. Ct. 879 (1995), provides that an employee's relief can be limited by evidence of wrong-doing discovered after his or her termination that would have provided a

[4] Defendant cites to the following examples: (1) plaintiff allegedly lying under oath during a deposition regarding his Florida divorce proceedings; (2) failing to produce discovery in this matter; and (3) lying about where he obtained attorney-client privileged documents. [Doc. #110, 8-9].

legitimate basis for such termination." Chamberlain, 2007 WL 2786421, at *2; see also Adonna v. Parker Hannifin Corp., No. 3:13cv1616(RNC), 2014 WL 788946, at *2 (D. Conn. Feb. 25, 2014) (same). Nevertheless, although the Supreme Court recognized this defense, it also "cautioned against the potential for abuse of the discovery process by employers seeking to limit their liability through an after acquired evidence defense, noting the ability of Court to curb such abuses through the Federal Rules of Civil Procedure." Chamberlain, 2007 WL 2786421, at *2 (citation omitted). Indeed, "[s]everal lower courts have relied on McKennon in holding that the after-acquired evidence defense cannot be used to pursue discovery in the absence of some basis for believing that after-acquired evidence of wrongdoing will be revealed." Id. (compiling cases).

Here, as in Chamberlain and Adonna, defendant has failed to present any evidence to suggest that the plaintiff misrepresented information to the defendant, which would have provided legitimate grounds for his termination. There is no apparent nexus between plaintiff allegedly lying at an unrelated deposition and his misrepresenting work experience with Deloitte on his employment application to defendant, the reasons behind his separation from Deloitte, or his earnings with Deloitte. On the contrary, "defendant has not pointed to any statements made by the plaintiff during his deposition or in response to interrogatories indicating that he may not have fully disclosed information to the defendant regarding his prior employment." Chamberlain, 2007 WL 2786421, at *3; see also Adonna, 2014 WL

788946, at *2 (finding that "defendant's perceived incongruity concerning a prior employer listed on the plaintiff's job application falls short of a sufficient basis to warrant discovery of the plaintiff's prior employment records."). It is quite clear from defendant's opposition brief that it "seeks discovery of the plaintiff's records in order to search for information from which to establish such a defense." Id. Therefore, the defendant may not, at least at this juncture of discovery, use the potential of an after-acquired evidence defense to conduct extensive discovery on the basis of pure speculation. See also Lev v. So. Nassau Cmty. Hosp., No. CV 10-5435(JS)(ARL), 2011 WL 3652282, at *1 (E.D.N.Y. Aug. 18, 2011) (citing Chamerlain, 2007 WL 2786421, at *3) (rejecting defendant's claim that they are entitled to plaintiff's prior employment records because such records may contain information relevant to an after-acquired evidence defense where "defendants have not provided the court with any evidence of prior wrongdoing during plaintiff's tenure at the Hospital nor have they suggested that plaintiff misrepresented information to defendant which might have provided legitimate grounds for her termination. To the contrary, defendants seek discovery of the prior employment records in order to search for information from which to ascertain whether or not to assert the defense. Such speculation without more fails to substantiate such a broad search of plaintiff's records on this ground.").

With this framework in mind, the Court next turns to each category of information sought.

B. Plaintiff's Resume and Job Applications

Defendant proffers that plaintiff's resume and job applications could provide evidence of plaintiff's skill set and qualifications, which are relevant to the issues of damages and mitigation. Defendant further argues that to the extent the information contained in these documents is inconsistent with that submitted to defendant, then these documents can be used to attack plaintiff's credibility. The Court rejects these arguments as there are less intrusive discovery mechanisms at defendant's disposal to obtain this information, including, for example, a request for production seeking these documents or interrogatories seeking information regarding plaintiff's "skill set and professional qualifications."

Moreover, defendant's argument that these documents may be used to attack plaintiff's credibility is completely speculative and unavailing. Defendant fails to proffer any deposition testimony or other evidence suggesting plaintiff was dishonest on his application for employment with defendant. Second, any such evidence would be barred under Federal Rule of Evidence 608. This rule provides that, other than evidence of criminal convictions, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). "It allows these matters to be 'inquired into' on cross-examination, but this permits a party only to elicit testimony from the witness about these instances, not to introduce documentary evidence." Guercia, 2013 WL 2156496, at *5 (citing

Hango v. Royall, 466 F. App'x 30, 34 (2d Cir. 2012); United States v. Bynum, 3 F.3d 769, 772 (4th Cir. 1993)). Therefore, any benefit from these documents would likely be marginal and outweighed by the harm that would result from obtaining them from plaintiff's former employer.

C. Plaintiff's performance reviews and evaluations

Defendant next seeks plaintiff's performance reviews and evaluations while working at Deloitte and contends these documents are relevant to plaintiff's performance issues at Mafcote and the legitimacy of Mafcote's reason(s) for terminating plaintiff's employment. This argument is also unavailing because,

> evidence of plaintiff's performance history is neither relevant nor admissible for the purpose of showing that the plaintiff performed poorly in his position with the defendant. First, the plaintiff's performance history is not relevant to the issues involved in the current case; rather, at issue is the plaintiff's performance in his position with the defendant. Second, the defendant's request for production of documents relating to the plaintiff's performance history [with his former employer] is not reasonably calculated to lead to the discovery of admissible evidence. The defendant seeks to discover evidence of the plaintiff's performance history to show that he has a propensity for certain performance deficiencies. Such evidence is inadmissible under Federal Rules of Evidence 404(a), which provides that [e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith…

Chamberlain, 2007 WL 2786421, at *3 (citing Fed. R. Evid. 404(a); Zubulake v. UBS Wharburg LLC, 382 F. Supp. 2d 538, 540-41 (S.D.N.Y. 2005)).

Defendant also contends that this information is relevant to plaintiff's earning capacity, which is an important element

of plaintiff's claim for lost wages in the form of front pay. In calculating a front pay award, the Court must estimate plaintiff's ability to mitigate his damages in the future, and must also take into account plaintiff's age, education and training, work experience, skills, the job market, and plaintiff's reasonable prospects of obtaining comparable employment. Shorter v. Hartford Fin. Servs. Group, Inc., No. 3:03 CV 0149 WIG, 2005 WL 2234507, at *3 (D. Conn. May 31, 2005) (citation omitted). The Court does not necessarily agree that defendant's prior performance reviews are relevant to his earning capacity. Nevertheless, even if this information is relevant, defendant may obtain this information through less intrusive discovery devices, such as plaintiff's deposition or a request for production.

D. Documents relating to plaintiff's compensation/wages

Defendants next argue that knowing plaintiff's compensation with Deloitte is likely to lead to the discovery of admissible evidence relating to plaintiff's damages claims and defenses thereto. Specifically, defendants contend that this is relevant to calculating an award of front-pay and plaintiff's prior experience and earning capacity. As an initial matter, the Court notes that plaintiff has already provided some of this requested information by virtue of his objections and sworn responses to defendant's first set of interrogatories. [See doc. #94-4, Response to Interrogatory No. 3 (noting his salary while employed with Deloitte)]. Additionally, the information sought will not necessarily be relevant to a calculation of front pay.

Finally, even if this information is relevant, defendant may obtain this information in a less obtrusive manner, for example by deposing plaintiff. See Sadofsky v. Fiesta Products, LLC, 252 F.R.D. 143, 153 (E.D.N.Y. 2008) (citation omitted) ("Depositions have also been held to constitute a less intrusive source for obtaining information [sought from tax returns."). To the extent that defendant argues plaintiff has failed to otherwise provide any W-2 or tax return information, this issue has been addressed in a separate ruling on defendant's motion to compel.

Defendant also argues that, "inasmuch as the information contained in Plaintiff's compensation and/or wage records is inconsistent with representations made by Plaintiff to Mafcote with respect [to] his salary while employed at Deloitte, such evidence can be used [to] attack Plaintiff's credibility." Again, this argument is entirely based on speculation. Defendant has provided no evidence suggesting that plaintiff lied about his compensation at Deloitte. Accordingly, for the reasons stated above, the Court rejects this argument.

E. Grievances, complaints, charges, and/or lawsuits

Defendants submit that, "If Plaintiff filed or otherwise was involved in grievances, complaints, charges and/or lawsuits against Deloitte, then such evidence can be admissible to show motive, state of mind, credibility and modus operandi." [Doc. #110, 6]. The Court disagrees and further notes that defendant fails to cite any Second Circuit case law in support of this position. Indeed, in a similar case, in the Eastern District of New York, the judge found that "defendants' request for

production of plaintiff's prior employment records [including documents related to complaints of discrimination] to show plaintiff's state of mind, motive and/or modus operandi is not reasonably calculated to lead to the discovery of admissible evidence. Evidence of plaintiff's propensity to act in a certain manner is inadmissible under Fed. R. Civ. P. 404(a)…" Lev, 2011 WL 3652282, at *2; c.f., Ireh v. Nassau Univ. Med. Ctr., No. CV06-09(LDW)(AKT), 2008 WL 4283344, at *6 (E.D.N.Y. Sept. 17, 2008) (agreeing with defendant that complaints of race or national origin discrimination made by plaintiff against former employer were relevant to discrimination action and ordering their production). Moreover, this information may be obtained through less intrusive discovery means, such as plaintiff's deposition and/or interrogatories directed to plaintiff.

F. Records reflecting reasons for employment separation

Finally, defendant seeks records reflecting the reasons behind plaintiff's separation from Deloitte. Defendant argues these documents are reasonably calculated to lead to the discovery of admissible evidence; further go to issues of credibility, mitigation of damages, front pay, and may support Mafcote's reasons for terminating plaintiff's employment.

With respect to credibility, mitigation of damages, and front pay, the Court has already rejected similar arguments. The Court further finds unavailing the argument that these documents may support defendant's reason(s) for terminating plaintiff's employment. Again, defendant's argument is completely speculative as to whether these documents will reveal that

defendant was terminated from Deloitte for gross misconduct. Indeed, defendant has failed to proffer any evidence in support of this position. See Adonna, 2014 WL 788946, at *2-3 (granting motion to quash subpoena seeking records from former employer reflecting plaintiff's reason for leaving where defendant failed to provide sufficient evidence of prior wrongdoing to warrant intrusion).

**IV. Conclusion**

For the reasons stated, and on the current record, plaintiffs' motion to quash [Doc. #95] is **GRANTED.** The Court declines to award plaintiff its costs and fees for bringing this motion on the current record.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 21st day of July 2014.

____/s/______________________
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE