UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM R. BERNSTEIN          :
                              :
                              :
v.                            :     CIV. NO. 3:12CV311 (WWE)
                              :
MAFCOTE, INC.                 :
                              :

RULING ON PLAINTIFF'S MOTION TO COMPEL [DOC. #98]

Pending before the Court is plaintiff William Bernstein's motion to compel defendant Mafcote, Inc.'s responses to certain discovery requests. Defendant opposes plaintiff's motion. [Doc. #109]. On June 25, 2014, the Court held a discovery conference on the record, addressing the issues raised in the pending motion. For the reasons articulated below, the Court **GRANTS IN PART AND DENIES IN PART** plaintiff's motion to compel. [Doc. #98].

I.   **Background**

Plaintiff brings this action against his former employer Mafcote, Inc., claiming disability discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. §12112(a), and the Connecticut Fair Employment Practices Act, Connecticut General Statutes §46a-60(a)(1). [Am. Compl., Doc. #55].  Plaintiff also alleges breach of the implied covenant of good faith and fair dealing. [Id.].[1]

The following facts are derived from the allegations in the amended complaint. Plaintiff was working for defendant as Vice

---

[1] The Court notes for purposes of this ruling that defendant has yet to file an answer or affirmative defenses to the amended complaint. Defendant's motion to dismiss count 5 of the amended complaint is pending. [Doc. #64].

President of Finance when he was diagnosed with lung cancer. Plaintiff alleges that shortly after he disclosed this diagnosis to defendant's CEO, Steven Schulman, Mr. Schulman began a campaign to harass plaintiff and end his employment. Plaintiff underwent surgery on January 7, 2011 to remove the cancerous growth. Plaintiff alleges that "[d]ays before" this operation, Mr. Schulman and his human resources manager, Jennifer Calderon, began to consult an attorney regarding plaintiff's employment. Defendant ultimately terminated plaintiff's employment on the allegedly pretextual grounds that he was overpaid.

## II. __Legal Standard__

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).  Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery.  See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991); Morse/Diesel, Inc. v. Fidelity & Deposit Co., 122 F.R.D. 447, 449 (S.D.N.Y. 1988). "The party resisting discovery bears the burden of showing why discovery should be denied." Cole v. Towers Perrin Forster & Crosby, 256

F.R.D. 79, 80 (D. Conn. 2009).

## III. <u>Discussion</u>[2]

a. <u>Motion to Compel Category (i)</u>

Plaintiff seeks an order compelling defendant to produce "all documents supporting the defendant's claim that it allegedly posted advertisements for the plaintiff's Vice President of Finance Position in early 2010, before learning of his cancerous lung tumor and chronic cough, and any documents showing the dates any such advertisements were posted[.]" In this regard, plaintiff specifically seeks an order compelling defendant to withdraw its objection and provide a complete answer to Request for Production 28[3]:

> <u>Production Request 28</u>: All advertisements for the position of Chief Financial Officer, Treasurer, Accounts Receivable Manager, Credit and Collections Manager, Banking Relationship Manager or positions which would encompass those responsibilities, or bookkeeper or for the hiring of someone to perform any of the duties of those positions during or after plaintiff's employment.

> <u>Defendant's Objection</u>: Defendant objects to Request No. 28 on the grounds that it is overly broad, both in substance and temporal scope (unlimited), unduly burdensome, vague, ambiguous and it is not reasonably calculated to lead to the discovery of admissible evidence; it calls for irrelevant and immaterial information and documents that are beyond the scope of discovery prohibited by Rule 26(b).

> <u>Defendant's Response</u>: Subject to the pending objections and without waiving same, advertisements relating to Plaintiff's former position that are within Defendant's possession, custody and control are produced.

_____

[2] Plaintiff notes that, "Mafcote asserts numerous boilerplate objections to all of Bernstein's document requests. [Plaintiff] has requested that all these objections be withdrawn so he can determine if all responsive documentation has been produced. No amended responses have been received to date so it is, in general, impossible to tell if Mafcote is withholding responsive discovery material. Nevertheless, in the interests of facilitating a speedy resolution of the discovery dispute, Bernstein is willing to confine his complaint to limited document requests." [Doc. #98-1, 2-3].

[3] As set forth in plaintiff's first set of interrogatories and requests for production.

[Doc. #98-1, 3]. Plaintiff claims that no advertisements for plaintiff's former Vice President of Finance position have been produced, nor for any other position except an undated job description for a "CFO." Plaintiff, moreover, states that in response to an interrogatory, defendant stated that three advertisements for plaintiff's job had been placed in 2010, all under titles other than Vice President of Finance. Defendant claims that it has responded "fully and fairly" to this request, and in fact produced documents responsive to this request on September 23, 2013. [Doc. #109, 6-7, Id. at Exs. P, P-1]. Defendant also claims to have produced "hundreds" of additional responsive documents. At the discovery conference on June 25, 2014, defense counsel represented that everything responsive to this request had been produced. The Court **GRANTS in part** plaintiff's request. Rather than withdrawing its objection, defendant will amend its response to indicate the bates numbers of the documents produced that are responsive to this request. Defendant will furthermore include in its response a sworn statement that after diligent inquiry, all responsive documents have been produced. See Napolitano v. Synthes USA, LLC, 297 F.R.D. 194, 200 (D. Conn 2014) (citations omitted) ("When a party claims that the requested documents have already been produced, it must indicate that fact under oath in response to the request.").

    b. Motion to Compel Category (ii)

Plaintiff next seeks an order compelling defendant to produce "unconsolidated and consolidated audited financial

statements of Mafcote, Inc. for the years 2008 [through] 2013[.]" In that regard, plaintiff seeks to compel a response to Request No. 1 of his fourth set of discovery requests:

> Request No. 1: Complete and audited consolidated financial statements for the holding company Mafcote, Inc. for the years 2008 through 2012 inclusive and 2013 when available.
>
> Objection: Defendant objects to Request No. 1 for the reason that it is overly broad, both in substance and temporal scope, and vague and ambiguous, especially inasmuch as it requests production of "[c]omplete and audited financial statements for the holding company Mafcote, Inc. for the years 2008 through 2012 inclusive and 2013 (sic)." Defendant further objects to Request No. 1 for the reason that it is not reasonably calculated to lead to the discovery of admissible evidence, calls for irrelevant and immaterial information and documents that are beyond the scope of discovery proscribed by Rule 26(b), and is unduly burdensome and expensive. Defendant further objects to Request No. 1 for the reason that it calls for disclosure or production of confidential and proprietary business information.
>
> Response: Objections pending.

At the June 25, 2014 discovery conference, defense counsel represented that all responsive documents to this request had been produced. In light of this representation, defendant will amend its response to include a sworn statement that after diligent inquiry, all responsive documents have been produced.

> c. Motion to Compel Category (iii)

Plaintiff next seeks "copies of Unanimous Written Consent of Directors involving or consenting to monetary distributions by Mafcote Inc. to its members at any time from January 1, 2010 to the present." In this regard, plaintiff specifically seeks to compel a response to Request 47 of his first discovery requests:

> Request No. 47: Provide copies of all Unanimous Written Consent of Directors involving or consenting to distributions by Mafcote to its members at any time from January 1, 2010 to the present.

<u>Objection</u>: Defendant objects to Request No. 4[7] for the reason that it calls for the disclosure of confidential business information and is not reasonably calculated to lead to the discovery of admissible evidence; it calls for irrelevant and immaterial information that is beyond the scope of discovery proscribed by Rule 26(b). Defendant further objects to Request No. 47 for the reasons that it is overly broad, unduly burdensome and expensive, vague and ambiguous, especially inasmuch as it requests copies of "all Unanimous Written Consents of Director involving or consenting to its distributions by Mafcote to its members form any time from January 1, 2010 to the present."

<u>Response</u>: Objections pending.

Plaintiff claims this information is relevant to the claims and defenses asserted in this litigation, specifically in light of defendant's claim that it was struggling financially at the time it attempted to reduce plaintiff's compensation. Although defendant stands on its objections, it did produce a statement of monetary distributions to its members and officers for the period of January 1, 2010 through December 31, 2011.

As stated at the June 25, 2014 discovery conference, plaintiff's counsel will review with plaintiff the statement of monetary distributions produced and, if deemed necessary, shall propound a more specific request for the supporting information. If defendant objects to producing the supporting information, then counsel will contact the Court for a telephone conference.

d. <u>Motion to Compel Category (iv)</u>

Plaintiff seeks an order compelling defendant to produce "any contemporaneous documentation showing any salary reductions for Mafcote Inc. employees from October 1, 2010 through August 2011." In this regard, plaintiff specifically seeks to compel responses to Request 49 of his first discovery requests, and Request 1 from his third set of discovery requests:

Request No. 49: Provide copies of all information
pertaining to salary cuts for officers of Mafcote from
January 1, 2010.

Objection: Defendant objects to Request No. 49 for the
reasons that it is overly broad, especially inasmuch as it
requests production of "all documents listing or
referencing any bonuses or salary increases given to
employees and officers of Mafcote, and its holding
companies," is unduly burdensome and expensive and is not
reasonably calculated to lead to the discovery of
admissible evidence; it calls for irrelevant and immaterial
information that is beyond the scope of discovery
proscribed by Rule 26(b). Defendant further objects to
Request No. 49 for the reason that it calls for
confidential business information.

Response: Objections pending.

Request No. 1: All records of any kind relating, referring
to or describing any reduction in compensation or benefits
for any Mafcote officers or management employees, other
than the plaintiff, from October 1, 2010 through the
termination of his employment in august 2011.

Objection: Defendant objects to Request No. 1 for the
reason that it is overly broad and vague and ambiguous,
especially inasmuch as it requests production of "[a]ll
records of any kind relating referring to or describing any
reduction in compensation or benefits for any Mafcote
officers or management employees," unduly burdensome,
expensive and is not reasonably calculated to lead to the
discovery of admissible evidence; it calls for irrelevant
and immaterial information and documents that are beyond
the scope of discovery proscribed by Rule 26(b).

Response: Subject to the pending objections and without
waiving same: Documents responsive to this request were
produced to Plaintiff's counsel previously, on September
23, 2013, November 5, 2013 and December 20, 2013.
Document(s) summarizing salary reductions for officers and
management-level employees for the time period October 1,
2010, through August 31, 2011, are produced.

Supplemental Response: Subject to the pending objections
and without waiving same; documents relating to reductions
in compensation and/or benefits for Mafcote officers and
employees other than Plaintiff are produced.

Plaintiff claims this information is relevant to the claims and

defenses asserted in this litigation, specifically in light of

defendant's claim that plaintiff was overpaid and its attempts

to reduce plaintiff's salary. Plaintiff states "not a single

document evidencing any salary reductions at Mafcote Inc. in the time period requested has been produced." Plaintiff "was not interested in receiving" summaries of salary reductions, but instead seeks the contemporaneous and underlying documents that would corroborate other salary reductions.

Defendant responds that it has "responded fully and fairly" to Requests 49 and 1 in that "[h]undreds – if not thousands" of documents evidencing employee salary reductions were produced. Defendant further represents that it has produced all responsive documents within its possession, custody or control subject to its objections. Defense counsel reiterated this position at the June 25, 2014 discovery conference.

The Court **GRANTS in part** plaintiff's request. In light of the representations made during the discovery conference, defendant will amend its responses to Request Nos. 49 and 1 to include a sworn statement that after diligent search, all responsive documents have been produced.

   e. Motion to Compel Category (v)

Plaintiff seeks an order compelling defendant to produce "any contemporaneous documents showing bonuses, distributions and/or salary increases for Mafcote Inc. employees between January 1, 2011 and December 31, 2011." In this regard, plaintiff specifically seeks to compel responses to Request 48 of his first discovery requests:

> Request No. 48: If you are contending that Bernstein was overpaid, or that Mafcote, Inc. was suffering financial hardship for the last two years of Bernstein's employment, provide copies of all documents listing or referencing any bonuses and salary increases given to employees and officers of Mafcote, and its holding companies from January

8

1, 2010 to the present.

Objection: Defendant objects to Request No. 48 for the
reasons that it is overly broad, especially inasmuch as it
requests production of "all documents listing or
referencing any bonuses or salary increases given to
employees and officers of Mafcote, and its holding
companies," is unduly burdensome and expensive and is not
reasonable calculated to lead to the discovery of
admissible evidence; it calls for irrelevant and immaterial
information that is beyond the scope of discovery
proscribed by Rule 26(b). Defendant further objects to
Request No. 48 for the reason that it calls for the
disclosure or production of confidential business
information.

Response: Objections pending.

Similar to the documents sought by Request 49, plaintiff claims

this information is relevant to the claims and defenses asserted

in this litigation, specifically in light of defendant's claim

that plaintiff was overpaid and its attempts to reduce

plaintiff's salary. Plaintiff claims defendant "summarily

refuses to respond" to this request.

Defendant argues that Request No. 48 is "substantively the

same" as Request No. 2 of plaintiff's third set of discovery

requests:

Request No. 2: All records of any kind relating, referring
to or describing any monetary distributions, bonuses or
salary increases given to any Mafcote officer or management
level employees at any time from January 1, 2011 to
December 31, 2011.[4]

Defendant argues that it has responded to Request 48 and

produced responsive documents, which are also responsive to

Request No. 2. Defendant lists a number of documents already

produced to plaintiff and states an additional "plethora of

---

[4] Defendant asserted objections to this request, and further responded that,
"Subject to the pending objections and without waiving same: Documents
responsive to this request were produced to Plaintiff's counsel previously,
on September 23, 2013, November 5, 2013, and December 20, 2013. Documents
summarizing monetary distributions to officers and management-level employees
for the time period January 1, 2011 through December 31, 2011 are produced."

'contemporaneous' documents evidencing bonuses paid to employees were produced to Plaintiff's counsel…"

At the June 25, 2014 discovery conference, defense counsel represented that all responsive documents had been produced. Therefore, the Court **GRANTS in part** plaintiff's request. Defendant will amend its responses to Request Nos. 48 and 2 to include a sworn statement that after diligent search, all responsive documents have been produced.

    f. Motion to Compel Category (vi)

Plaintiff seeks an order compelling defendant to produce "copies of any personal or business journals maintained by Steven Schulman from 2010 to the present." In this regard, plaintiff seeks to compel responses to Request 4 of his fourth request for production.

> Production Request 4: Copy of any personal or business journal or calendar maintained by Steven Schulman from 2010 through the present.

> Objection: Defendant objects to Request No. 4 for the reason that it is vague and ambiguous and overly broad, both in temporal scope and substance, especially inasmuch as it requests production of "any personal or business calendar maintained by Steven Schulman from 2010 through the present," not reasonable (sic) calculated to lead to the discovery of admissible and evidence and calls for irrelevant and immaterial and documents that are beyond the scope of discovery proscribed by Rule 26(b). Defendant further objects to Request No. 4 for the reason that it is unduly burdensome and expensive.

> Supplemental Response: Subject to the pending objections and without waiving same: Non-privileged documents responsive to this request for the time period January 1, 2010 to August 31, 2011, are produced in native (.pst) format. (See DVD labeled "Production to Pl 03-14-14(03-18-14).").

Plaintiff states that, "not a single document responsive to this request has been produced", but rather only a privilege log

reflecting 190 calendar entries made by Schulman allegedly memorializing his conversations with attorneys. Defendant claims that it has responded fully and fairly to these requests, including the production of a CD containing "thousands" of calendar entries. Except for those allegedly privileged calendar entries, defendant states it has produced all documents responsive to this request for the time period January 1, 2010 through August 31, 2011.[5] At the June 25, 2014 discovery conference, defendant reiterated this position. Plaintiff's counsel, however, was not satisfied with this response and requested that the Court conduct an in camera review of the withheld calendar entries. By letter dated June 27, 2014, defendant submitted, inter alia, its "privilege log re supplemental production – March 18, 2014" and hundreds of withheld documents.

The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance. United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996). The Court construes the privilege narrowly because it renders relevant information undiscoverable; we apply it "only where necessary to achieve its purpose." Fisher v. United States, 425 U.S. 391, 403 (1976); see In re Grand Jury Investigation, 399 F.3d 527, 531 (2d Cir. 2005). The burden of establishing the applicability of the privilege rests with the party invoking it.

---

[5] At the June 25, 2014 discovery conference, counsel clarified that they had agreed to production of documents for a narrower timeframe than that sought in plaintiff's request.

In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000).
The privilege is triggered by a request for legal as opposed to
business advice. In re Grand Jury Subpoena, 731 F.2d 1032, 1037
(2d Cir. 1984). "Attorneys frequently give to their clients
business or other advice which, at least insofar as it can be
separated from their essentially professional legal services,
gives rise to no privilege whatever." Koumoulis v. Indep. Fin.
Mktg. Group, 295 F.R.D. 28, 37 (E.D.N.Y. 2013) (compiling
cases), aff'd, No. 10-CV-0887(PKC)(VMS), 2014 WL 223173
(E.D.N.Y. Jan. 21, 2014). "In the context of the attorney-client
privilege, 'legal advice involves the interpretation and
application of legal principles to guide future conduct or to
assess past conduct.'" Id.

   "Administrative documents including billing records,
expense reports, correspondence, bills, ledgers, statements,
time records, diary entries, time sheets, billing reports and
telephone logs fall under the attorney-client privilege only if
they reveal litigation strategy or other confidential
information." In re Kelley, 01-11686, 2003 WL 24144575, at *6
(Bankr. D. Vt. Apr. 24, 2003) (compiling cases; emphasis in
original); see also Bria v. U.S., No. Civ. 3:00CV1156 (CFD),
2002 WL 663862, at *5 (D. Conn. Mar. 26, 2002) (noting that the
attorney-client privilege generally does not protect from
disclosing legal invoices/billing records, unless they "reveal
the motive of the client in seeking representation, litigation
strategy, or the specific nature of the services provided, such
as researching particular areas[…]").

With respect to the work product doctrine, it "protects documents created by counsel or per counsel's directive, in anticipation of litigation." <u>Koumoulis</u>, 295 F.R.D. at 39 (citation omitted).  Work product includes both opinion work product, such as an attorney's mental impressions or legal theories, and fact work product, such as factual investigation results. <u>Id.</u> "To be entitled to protection for opinion work product, the party asserting the privilege must show a real, rather than speculative, concern that the work product will reveal counsel's thought processes in relation to pending or anticipated litigation. A party's conclusory assertions that a document constitutes opinion work product will be insufficient to establish that the document is privileged." <u>Id.</u> (citation and internal quotations omitted); <u>see also</u> <u>id.</u> (citations and internal quotations omitted; emphasis in original) ("When assessing whether a document was prepared in anticipation of litigation, courts consider if in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained <u>because of</u> the prospect of litigation… [T]he mere relation of documents to litigation does not automatically endow those documents with privileged status."). The party asserting work product protection "bears the heavy burden of establishing its applicability." <u>Koumoulis</u>, 295 F.R.D. at 39 (quoting <u>In re Grand Jury Subpoena Dated July 6, 2005</u>, 510 F.3d 180, 183 (2d Cir. 2007)).

Here, each of the calendar entries reflected on defendant's

privilege log is withheld on the basis of attorney-client privilege and work product protection. The documents provided for in camera review generally fall into one of six categories[6]: (1) general calendar entries with little to no substantive information; (2) calendar entries reflecting discussions about one particular settlement; (3) calendar entries with lists of information regarding "miscellaneous attorneys' fees" and "ongoing legal work"; (4) calendar entries reflecting discussions about multiple settlements; (5) calendar entries with the subject "Glenn D see file"; and (6) calendar entries with the subject "Jennifer.. see file." Defendant asserts that "all calendar entries listed in the March 18, 2014 Privilege Log contain notations by Mr. Schulman concerning communications he had or was having with his legal counsel." [Doc. #109, 11]. The Court will address each category of withheld documents in turn.

### *(1) General Calendar Entries[7]*

The first group of documents is comprised of general Outlook calendar entries. As an initial matter, on the current record, defendant has failed to meet its burden that the withheld calendar entries are subject to work product protection. Indeed, the privilege log fails to identify how these specific documents were prepared in anticipation of litigation. Moreover, defendant failed to offer an explanation via privilege log or affidavit as to why these calendar entries

---

[6] For the most part the documents within each category are largely identical, albeit with occasional alteration(s).

[7] Bates Nos. 1511, 1515, 1522, 1524, 1630-32, 1634, 1637, 1648-51, 1659, 1662, 1708-09, 1739, 1880-81.

should be considered attorney work product. The content of the
documents reviewed in camera was not sufficient to meet
defendant's burden.  Therefore, the Court overrules the
assertion of work product protection.

The Court also finds that these documents are not protected
by the attorney-client privilege as it is not apparent that they
reveal confidential information or otherwise indicate that the
memorialized communications' predominant purpose was to obtain
or provide legal advice. Not only does the defendant's privilege
log provide insufficient information in this respect, but
defendant also did not provide any affidavits that might have
remedied these deficiencies. Indeed, what defendant neglects to
consider is that the attorney-client privilege does not
necessarily attach to all communications between a client and
his or her attorney. See Koumoulis, 295 F.R.D. at 38 (compiling
cases) (noting that there is no presumption that communications
with outside counsel are privileged); see also id. at 46
(finding communications concerning the scheduling of
conversations with outside counsel not privileged). To that
extent, the substance of any advice is not apparent from the
content of these documents.  Therefore, the Court overrules the
assertion of attorney-client privilege. Defendant shall produce
copies of these documents within fourteen (14) days of this
ruling.

### (2) Calendar Entries Reflecting Settlement Discussions[8]

The next group of calendar entries appears to memorialize communications to and from Attorney Howarth concerning settlement negotiations and related litigation strategy. Therefore, the Court sustains the assertions of the attorney-client privilege and work product protection for this category of documents.

### (3) Calendar Entries Listing Substantive Information[9]

The third group of documents consists of calendar entries with lists of information concerning, per defendant's privilege log, "Miscellaneous attorneys' fees; ongoing legal work."[10] Again, on the current record, defendant has failed to meet its burden that the withheld calendar entries are subject to work product protection. Indeed, the privilege log fails to identify how these specific documents were prepared in anticipation of litigation. Moreover, defendant failed to offer an explanation via privilege log or affidavit as to why these calendar entries should be considered attorney work product. The content of the documents reviewed in camera was not sufficient to meet defendant's burden.  Therefore, the Court overrules the assertion of work product protection.

---

[8] Bates Nos. 1512-13, 1518-19, 1527-28, 1534, 1552-54, 1564, 1568, 1582, 1589-90, 1593, 1602, 1633, 1688, 1690, 1731-32, 1738, 1791-92, 1870-71.

[9] Bates Nos. 1514, 1516-17, 1520-21, 1523, 1525-26, 1531-33, 1535-41, 1543-47, 1549-50, 1555, 1558-59, 1563, 1566-67, 1569-70, 1572, 1574-81, 1586-88, 1591-92, 1598, 1601, 1603, 1606-08, 1611-17, 1622-23, 1628-29, 1635-36, 1638-39, 1652, 1660-61, 1663-66, 1675, 1682-83, 1687, 1689, 1697, 1716-19, 1722, 1735, 1740-41, 1747, 1750-52, 1757, 1760, 1763-67, 1770, 1773-77, 1780-81, 1786-90, 1793, 1798-99.

[10] Except for Bates No. 1514, which states it is a communication with Attorney Howarth. This, however, appears to be an error.

Turning next to the attorney-client privilege, the Court likewise finds that these documents are not protected by the attorney-client privilege. The content of the documents reviewed in camera does not appear to reveal litigation strategy or other confidential information. See In re Kelley, 2003 WL 24144575, at *6. Nor do the documents, to the extent that they reference attorney's fees, "reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided." Bria, 2002 WL 663862, at *5. Indeed, given the somewhat sparse notes reflected on these documents, it is hard to glean exactly what Mr. Schulman is referring to, let alone any confidential legal advice. Therefore, the Court overrules the assertion of attorney-client privilege for these documents. Defendant shall produce copies of these documents within fourteen (14) days of this ruling.

### (4) Calendar Entries Reflecting Multiple Settlement Discussions[11]

The fourth group of documents consists of calendar entries which memorialize communications to and from Attorney Walsh concerning settlement negotiations for multiple matters and, in some instances, related litigation strategy. Therefore, the Court sustains the assertions of the attorney-client privilege and work product protection for this category of documents.

---

[11] Bates Nos. 1529-30, 1542, 1548, 1551, 1556-57, 1560-62, 1565, 1571, 1573, 1583-85, 1594-97, 1599-1600, 1604-05, 1609-10, 1618-21, 1624-27, 1640-47, 1653-58, 1667-74, 1676-81, 1684-86, 1691-96, 1698-1707, 1710-1715, 1720-21, 1723-30, 1733-34, 1736-37, 1742-49, 1753-56, 1758-59, 1761-62, 1768-69, 1771-72, 1778-79, 1782-85, 1794-97, 1800-03, 1807-08, 1858-61, 1864-65, 1868-69, 1872-77, 1882-85.

### *(5) Calendar Entries reflecting Substantive Information with Subject "Glenn D…"[12]*

The fifth group of calendar entries all bear the subject "Glenn D see file." The privilege entries for these documents all indicate that each is a "Communication with G. Duhl, Esq." Again, on the current record, defendant has failed to meet its burden that the withheld calendar entries are subject to work product protection as the privilege log fails to identify how these specific documents were prepared in anticipation of litigation. The content of the documents reviewed in camera was not sufficient to meet defendant's burden.  Therefore, the Court overrules the assertion of work product protection.

However, as to the attorney-client privilege, the content of the documents reviewed reflect both requests for legal advice and factual background information conveyed for the purpose of obtaining legal advice. Therefore, the Court sustains the assertion of attorney-client privilege for these documents.

### *(6) Calendar Entries reflecting Substantive Information with Subject "Jennifer…"[13]*

The last set of calendar entries all bear the subject "Jennifer.. see file". The privilege log entries for these documents all indicate that each is a "Communication with G. Duhl, Esq. and J. Calderon re legal matter(s)." After a careful review of the documents, the Court finds that these documents are not protected work product. There is no indication that these documents were prepared in anticipation of litigation.

---

[12] Bates Nos. 1804-06, 1817-20, 1838-41, 1854-57, 1862-63, 1866-67, 1878-79.

[13] Bates Nos. 1809-16, 1821-37, 1842-53.

Moreover, defendants failed to offer an explanation via
privilege log or affidavit as to why these calendar entries
should be considered attorney work product. The content of the
documents reviewed in camera was not sufficient to meet
defendant's burden.  Therefore, the Court overrules the
assertion of work product protection.

The Court also finds that these documents are not protected
by the attorney-client privilege. Although the privilege log
identifies these documents as communications with Attorney Duhl,
this is not evident from the face of the documents.  Nor is it
apparent that the predominant purpose of these documents was to
obtain legal advice. "In the context of attorney-client
privilege, legal advice involves the interpretation and
application of legal principles to guide future conduct or to
assess past conduct. Obtaining or providing legal advice must be
predominant purpose of a privileged communication." Koumoulis,
295 F.R.D. at 37 (citations and internal quotations omitted);
see also id. at 38 (compiling cases) ("Any ambiguities as to
whether the essential elements [of the attorney-client
privilege] have been met are construed against the party
asserting the privilege.").  Here, by contrast, these documents
merely list various items that appear to be primarily of
business/human resources, as opposed to legal concern, such as:

> 10 - Karon, date she starts, Will end of that week
>
> […]
> 2 - credit check all new employees, W2
>
> […]

> 1 – list of discharged personnel to Glen (sic)
>
> […]
>
> 5 – Emp Practice 8/1, Crim 8/1, My personal 9/15, policies received
>
> […]
>
> Absences over 5 days, make up work, snow days make up work.

These documents also include the following notations:

> 1-Mike Fired for cause (abusive language in the workplace, hostile communication bad language,) and no unemployment
>
> Or
>
> Through the end of year and unemployment and departure as resignature
>
> Or
>
> Fired no cause 2 weeks

The Court also finds that this particular notation is not protected by the attorney-client privilege. "Although to obtain informed legal advice, a client might provide her attorney with [] factual background information," Koumoulis, 295 F.R.D. at 46, the documents reviewed do not support a finding that obtaining legal advice was defendant's predominant purpose. See id. at 45 ("A primary purpose of a company's human resources program is to ensure compliance with the myriad of laws regulating employer-employee relations… Even without any attorney's participation, human resources work may very likely require consideration of relevant laws, and their application to the facts presented. Despite its legal content, human resources work, like other business activities with a regulatory flavor, is part of the

day-to-day operation of a business; it is not a privileged legal activity."). Therefore the Court overrules the assertion of attorney-client privilege for these documents. Defendant shall produce copies of these documents within fourteen (14) days of this ruling.

**IV.** **Conclusion**

For the reasons stated, plaintiffs' motion to compel [Doc. #98] is **GRANTED IN PART AND DENIED IN PART.**

Defendants will produce the documents ordered herein and/or serve amended responses to the subject discovery requests within fourteen (14) days of this ruling, unless otherwise stated.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 21st day of July 2014.


_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE