UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM R. BERNSTEIN          :
                              :
                              :
v.                            :      CIV. NO. 3:12CV311 (WWE)
                              :
MAFCOTE, INC.                 :
                              :

RULING ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER [DOC. #71]

Defendant Mafcote, Inc. moves pursuant to Federal Rule of
Civil Procedure 26(c) for the entry of a protective order in
connection with plaintiff William Bernstein's alleged
unauthorized possession of attorney-client privileged
communications. [Doc. #71]. Plaintiff opposes defendant's motion
and contends that the subject documents were not stolen and,
further, are not subject to any privilege. [Doc. #86]. For the
reasons articulated below, the Court **DENIES** defendant's motion
for protective order [Doc. #71].

I.    **BACKGROUND**

Plaintiff brings this action against his former employer
Mafcote, Inc., claiming disability discrimination and
retaliation under the Americans with Disabilities Act, 42 U.S.C.
§12112(a), and the Connecticut Fair Employment Practices Act,
Connecticut General Statutes §46a-60(a)(1). [Am. Compl., Doc.
#55]. Plaintiff also alleges breach of the implied covenant of
good faith and fair dealing. [Id.].[1]

The following facts are derived from the allegations in the

---

[1] On August 14, 2014, Judge Eginton granted defendant's motion to dismiss
plaintiff's claim for breach of the implied covenant of good faith and fair
dealing. [Doc. #133].

amended complaint. Plaintiff was working for defendant as Vice President of Finance when he was diagnosed with lung cancer. Plaintiff alleges that shortly after disclosing this diagnosis to defendant's CEO, Steven Schulman, Mr. Schulman began a campaign to harass plaintiff and end his employment. Plaintiff underwent surgery on January 7, 2011 to remove the cancerous growth. Plaintiff alleges that "[d]ays before" this operation, Mr. Schulman, and his human resources manager, Jennifer Calderon, began to consult an attorney regarding plaintiff's employment.  Defendant ultimately terminated plaintiff's employment on the allegedly pretextual grounds that he was overpaid.

The present dispute arises from plaintiff's alleged unauthorized possession of documents defendant claims are confidential communications with its attorney(s). Defendant claims plaintiff obtained these documents by "illegal means" and that plaintiff's "clandestine use of the Communications in prosecuting this case has worked irreparable harm upon [defendant]."[2] [Doc. #71-1, 1]. As a result, defendant seeks the entry of a protective order which would: (1) prevent plaintiff and his attorneys from disclosing documents and communications between defendant and its legal counsel regarding matters in this case; (2) require plaintiff to return or destroy all such documents; (3) prevent plaintiff from introducing into evidence

---

[2] On the current record, the Court declines to make any findings with respect to whether plaintiff "stole" the documents at issue. Since defendant filed this motion, plaintiff has provided answers to interrogatories which detail how he came into possession of the documents.

or otherwise using such documents or communications; (4) strike paragraph 15 of the Amended Complaint; and (5) preclude plaintiff's allegations or claim(s) based upon plaintiff's knowledge of the documents and communications. Defendant also seeks the award of costs and reasonable attorney's fees incurred in bringing the motion for protective order, as well as leave to initiate a separate action pursuant to Connecticut General Statutes section 53a-251. Plaintiff asserts several arguments in opposition to the motion for protective order, including that the alleged documents are not subject to the attorney-client privilege, that plaintiff did not "steal" the documents at issue, and that even if the documents are privileged, they cannot be used to shelter tortious conduct under the crime-fraud exception to the attorney-client privilege.

On April 10, 2014, the Court held a telephone conference regarding the motion for protective order. After hearing argument of counsel, the Court ordered that the parties submit both the subject documents and the documents referenced on defendant's privilege log for an <u>in camera</u> review.

II.  **LEGAL STANDARD**

a. **Protective Orders, Generally**

Rule 26(c) of the Federal Rules of Civil Procedure reads, in pertinent part, that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c)(1).  The burden of showing good cause for the issuance of

a protective order falls on the party seeking the order.  <u>Brown v. Astoria Fed. Sav. & Loan Ass'n</u>, 444 F. App'x 504, 505 (2d Cir. 2011) (citations omitted).  To establish good cause under Rule 26(c), the party must set forth a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  <u>Jerolimo v. Physicians for Women, P.C.</u>, 238 F.R.D. 354, 356 (D. Conn. 2006) (citations omitted).  In other words, good cause exists when disclosure will result in a "clearly defined and serious injury" to the party seeking the protective order."  <u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 786 (3d Cir. 1994).  Moreover, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning," are insufficient for a good cause showing.  <u>Id.</u> at 786 (quoting <u>Cipollone v. Liggett Group, Inc.</u>, 785 F.2d 1108, 1121 (3d Cir. 1986)).

   **b. <u>Attorney-Client Privilege</u>**

The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance. <u>United States v. Constr. Prods. Research, Inc.</u>, 73 F.3d 464, 473 (2d Cir. 1996). The Court construes the privilege narrowly because it renders relevant information undiscoverable; we apply it "only where necessary to achieve its purpose." <u>Fisher v. United States</u>, 425 U.S. 391, 403 (1976); <u>see</u> <u>In re Grand Jury Investigation</u>, 399 F.3d 527, 531 (2d Cir. 2005). The Court uses a three-pronged standard for determining the legitimacy of an attorney-client

4

privilege claim.  A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice. In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007); Constr. Prods. Research, Inc., 73 F.3d at 473. The burden of establishing the applicability of the privilege rests with the party invoking it. In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000); United States v. Int'l Bd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO, 119 F.3d 210, 214 (2d Cir. 1997).

**III. DISCUSSION**

**a. Documents Submitted by Plaintiff for In Camera Review**

In light of the fact that many of defendant's arguments turn on the privileged nature of the documents, the Court will first address the in camera review. The documents submitted by plaintiff can be divided into three general categories: (1) billing statements from defendant's attorney; (2) email threads; and (3) emails attaching defendant's internal documents. The Court will address each in turn.

**1. *Billing Statements*[3]**

Plaintiff argues that the billing statements in his possession are not protected by the attorney-client privilege because they do not reveal any motive, strategy, intricate service descriptions, or specific research services. Defendant

---

[3] Bates Nos. 24-26.

responds that the invoices reveal defendant's motive in seeking representation and the specific nature of the services provided, and therefore are protected by the attorney-client privilege.

The Second Circuit has "consistently held that, absent special circumstances, client identity and fee information are not privileged […]  While consultation with an attorney, and payment of a fee, may be necessary to obtain legal advice, their disclosure does not inhibit the ordinary communication necessary for an attorney to act effectively, justly, and expeditiously." In re Grand Jury Subpoena Served Upon Doe, 781 F.2d 238, 247-48 (2d Cir. 1985) (en banc); see Bria v. U.S., No. Civ. 3:00CV1156 (CFD), 2002 WL 663862, at *5 (D. Conn. Mar. 26, 2002) (same) (collecting cases). Similarly, "the attorney-client privilege does not extend to billing records and expense reports" unless they "reveal the motive of the client seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law[…] " Bria, 2002 WL 663862, *5 (citations and internal quotation marks omitted).  Other courts in this circuit have also found that, "Administrative documents including billing records, expense reports, correspondence, bills, ledgers, statements, time records, diary entries, time sheets, billing reports and telephone logs fall under the attorney-client privilege only if they reveal litigation strategy or other confidential information." In re Kelley, 01-11686, 2003 WL 24144575, at *6 (Bankr. D. Vt. Apr. 24, 2003) (collecting cases; emphasis in

6

original). With this legal framework in mind, the Court turns to the documents at issue.

The Court finds that with the exception of two billing entries, these documents are not subject to the attorney-client privilege because they do not reveal the specific nature of the services provided, but rather only reveal the general nature of work performed. For example, many of the billing entries reference telephone conferences or correspondence "re employment issues and reduction in force", "re employment downsizing", "confidential information protections," and "business issues." Other entries merely reference "[r]eview summary of personnel issues" and "[r]eview documents re downsizing." These entries do not reveal the motive of defendant in seeking representation, litigation strategy, or the specific nature of the services provided. With respect to the entry reflecting "Research re National Labor Relations Act," the Court does not find this protected by the attorney-client privilege for these same reasons. See, e.g., Brennan v. Western Nat. Mut. Ins. Co., 199 F.R.D. 660, 662 (D. S.D. 2001) (finding that itemized billing statements relating to research of possible bad-faith claim did not reveal any secrets regarding litigation strategy, and therefore were not protected by the attorney-client privilege).

By contrast, the Court finds that the third billing entry on Bates No. 25 and the second billing entry on Bates No. 26 are protected by the attorney-client privilege as they reveal the specific nature of the services provided and/or reveal the

motive of defendant in seeking representation. Therefore, plaintiff shall return these documents to defendant, who will in turn reproduce these documents to plaintiff with the protected billing entries redacted.[4]

### 2. Email Threads[5]

The next group of documents consists of email threads forwarded by Mr. Schulman to Attorney Duhl. Defendant submits that, "[i]t is axiomatic that the correspondence by Mr. Schulman to undersigned counsel for Mafcote (Glenn Duhl) (Plaintiff's Bates 47-49 and 50) was communicated for the purpose of giving information to the undersigned to enable counsel to give sound advice, and so is privileged." [Doc. #71-1, 10-11 (citation omitted)]. Defendant's privilege log for these documents further indicate that both are a "Communication to attorney re employment issue." [Doc. #90-1, Ex. K, p. 2].

"Attorneys frequently give to their clients business or other advice which, at least insofar as it can be separated from their essentially professional legal services, gives rise to no privilege whatever." Koumoulis v. Indep. Fin. Mktg. Group, 295 F.R.D. 28, 37 (E.D.N.Y. 2013) (compiling cases), aff'd, No. 10-CV-0887(PKC)(VMS), 2014 WL 223173 (E.D.N.Y. Jan. 21, 2014). "In the context of the attorney-client privilege, legal advice involves the interpretation and application of legal principles

---

[4] As further discussed, infra, the Court does not find on the current record that the crime fraud exception to the attorney-client privilege applies.

[5] Bates Nos. 47-50.

to guide future conduct or to assess past conduct. Obtaining or providing legal advice must be predominant purpose of a privileged communication" Id. (internal quotation marks omitted).

The Court finds that defendant has not met its burden of showing that these documents are protected by the attorney-client privilege. Although these documents reflect Mr. Schulman forwarding chain emails to Attorney Duhl[6], it is unclear whether he has sent such information to Attorney Duhl predominantly for the purpose of legal advice. For example, the privilege log merely states that these are communications "re employment issue." Although in its reply brief defendant's counsel "represents to the Court that Plaintiff's Bates 47-49 and 50 were communicated to it for the purpose of giving information to the undersigned to enable counsel to give sound and informed legal advice[,]" [Doc. #90, 4], Mr. Schulman's supporting affidavit does not attest to this. See Doc. #71-4, Ex. G, ¶16 ("As to communications between myself and counsel for Mafcote, Glenn Duhl, Esq., I always intended for such communications [] to be and remain privileged and confidential[…]"). Accordingly, the Court finds that defendant has failed to meet its burden of establishing the applicability of the attorney-client privilege for these documents. See Koumoulis, 295 F.R.D. at 38 (compiling cases) ("Any ambiguities as to whether the essential elements

---

[6] The first email to Attorney Duhl states, "I would like to call you tonight about my reply or not." The second similarly states, "I would like to call you tonight about this."

9

[of the attorney-client privilege] have been met are construed against the party asserting the privilege.").

### 3. *Emails Attaching Defendant's Internal Documents*[7]

Bates Nos. 27 and 30 are duplicate copies of the same emails dated February 1 and 2. Attached to the February 2 emails at Bates No. 31 is a job posting for a CFO position, and at Bates Nos. 32-34, a resumé for Karen L. Kelley. The email dated February 1 is from Mr. Schulman to Ms. Calderon and Attorney Duhl, although the body of the email is only addressed to Ms. Calderon. The email requests Ms. Calderon to respond to several inquiries, which she does by inserting her answers into the February 1 email by a response email dated February 2. The February 2 email is only sent to Mr. Schulman. The Court finds that these emails are not protected by the attorney-client privilege. Although Attorney Duhl received the February 1 email, there is no implicit request for legal advice apparent from its contents, nor does it appear to have been sent for the purpose of providing factual information for the purposes of future legal advice. Moreover, the email appears solely directed to Ms. Calderon. Just because Attorney Dulh received the February 1 email does not make it privileged. Indeed, what defendant neglects to consider is that the attorney-client privilege does not necessarily attach to all communications between a client and his or her attorney. See Koumoulis, 295 F.R.D. at 38 (compiling cases) (noting that there is no presumption that

---

[7] Bates Nos. 27, 30-34, 36-38. Bates Nos. 27 and 30 are identical.

communications with outside counsel are privileged); Buxbaum v. St. Vincent's Health Svcs., No. 3:12CV117 (WWE), 2013 WL 74733, at *5 (D. Conn. Jan. 7, 2013) (citation omitted) ("A document is not privileged merely because it was sent or received between an attorney and the client.  The document must contain confidential communication relating to legal advice."); see also Owens v. Stifel, Nicolaus & Co., Inc., Civil Action No. 7:12-CV-144(HL), 2013 WL 6389035, at *2 (M.D. Ga. Dec. 6, 2013) ("[I]nformation that is not otherwise privileged will not become so simply by being communicated to or filtered through an attorney."). The attachments to the February 2 email (Bates Nos. 31-34) are likewise not privileged.

Two emails comprise Bates Nos. 36 and 37. One is from Mr. Schulman to Ms. Calderon and the other reflects Ms. Calderon's response to Mr. Schulman. Neither of these emails is subject to the attorney-client privilege. First, the emails are not to or from an attorney. Second, the emails do not divulge the substance of any legal advice, or a substantive request for legal advice.

Bates No. 38 is an Outlook calendar entry noting a cancelled conference call with Attorney Duhl "to discuss FedEx package." The Court finds that this document is not protected by the attorney-client privilege because it does not reveal confidential legal advice, the specific nature of the services provided, or the motive of defendant in seeking representation. See also Koumoulis, 295 F.R.D. at 37 (finding communications

11

concerning the scheduling of conversations with outside counsel not privileged).

### b. **Documents submitted by Defendant for In Camera Review**

After a conference call with the Court on the pending motion for protective order, defendant submitted several hundred pages of documents withheld on the basis of attorney-client privilege, along with a copy of its privilege log. Plaintiff has urged the Court that the motion for protective order hinges only on the specific documents referenced therein.

The Court suggested this particular in camera review to assuage any concerns plaintiff may have with respect to defendant withholding any non-privileged documents. However, in light of plaintiff's statements, the Court will defer reviewing the withheld documents at this time. Instead, the Court urges defendants to reconsider whether the production of any withheld documents is warranted in light of the analysis in this Ruling as to the documents reviewed in camera.[8] Should any concerns remain, or otherwise arise, the parties may request the Court to conduct the in camera review.

### c. **Crime-Fraud Exception to Attorney-Client Privilege**

Plaintiff argues that even if the subject documents are privileged, the crime-fraud exception applies to overcome the privilege. Defendant argues that plaintiff has failed to meet his burden of overcoming the privilege.

---

[8] Defendant may also wish to consider the Court's analysis in the July 21, 2014 ruling on Plaintiff's motion to compel with respect to the withheld calendar entries. [Doc. #122].

"It is well-established that communications that otherwise would be protected by the attorney-client privilege […] are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." Sony Elec., Inc. v. Soundview Tech., Inc., 217 F.R.D. 104, 112-13 (D. Conn. 2002) (citation omitted).  "In order for the crime-fraud exception to apply, the party seeking to overcome the privilege has the burden of showing probable cause to believe that a crime or fraud had been committed and that the communications were in furtherance thereof."  Cendant Corp. v. Shelton, 246 F.R.D. 401, 205 (D. Conn. 2007) (citation and internal quotation omitted). "Probable cause exists when a 'prudent person' would have 'a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof.'"  Id. (citation omitted).

Plaintiff points to the following facts in support of applying the crime-fraud exception: (1) the timing of the communications; (2) the affidavit and testimony of Denise Cooper; (3) the assessment of the CHRO; and (4) that there was reason to believe discrimination occurred. [Doc. #86, 13]. Defendant contests each factual basis relied upon by plaintiff. [Doc. #90, 5-6]. The Court credits defendant's arguments and finds that plaintiff has failed to meet its burden to establish the crime-fraud exception. There is insufficient basis in the current record for a prudent person to suspect the perpetration or attempted perpetration of fraud.

### d. **Relief Requested in Protective Order**

Defendant requests a myriad of relief in the motion for protective order. However, in light of the Court's findings that subject documents (with the exception of two minor billing entries, only one of which contains de minimis information relevant to the pending action) are not privileged, the Court rules as follows.

### 1. **Request for order precluding plaintiff from disclosing communications**

Defendant requests an order precluding plaintiff from disclosing the subject communications. Since the motion for protective order was filed, plaintiff has responded to defendant's discovery requests detailing to whom plaintiff has disclosed these specific communications. Plaintiff identified by interrogatory that he has only "made available" the same to his legal counsel and his wife. He has also "discussed many of these documents" with Denise Cooper. In lieu of an outright preclusion of plaintiff from disclosing the communications, defendant may designate these documents "confidential" pursuant to the parties' stipulated protective order. Therefore, this request is denied.

### 2. **Request for order requiring plaintiff to return or destroy all documents and communications between defendant and its counsel**

The Court denies this request in light of its findings after the in camera review. The Court has already ordered that plaintiff return the subject billing statements reflecting privileged material. See Section III(a)(2) supra.

14

### 3.   Request for order precluding plaintiff from offering or otherwise using such documents and communications

Defendant next seeks an order,

> Precluding Plaintiff from introducing into evidence or otherwise using in any manner, in this case: (a) the Communications; (b) the contents thereof; or (c) the fact of existence of the Communications, because the Communications are protected from disclosure pursuant to the attorney-client privilege and Plaintiff's receipt, possession and knowledge thereof was and is unauthorized and was accomplished by illegal means without Mafcote Inc.'s knowledge or consent[.]

On the current record, the Court DENIES without prejudice to re-filing the relief requested. First, the Court notes that this relief is better reserved for a future motion in limine and/or motion to strike. Second, the majority of the communications are not protected by the attorney-privilege and accordingly would have been produced in discovery regardless of the allegedly "illegal" or "unauthorized" possession of the documents at issue. To the extent that plaintiff's knowledge of two billing entries in some way prejudices defendants, then in the future defendant may seek appropriate relief.

### 4. Request for order striking paragraph 15 of the Amended Complaint

Plaintiff next seeks an order striking paragraph 15 of the Amended Complaint, "because it is derivative of and based upon Plaintiff's unlawful and unauthorized possession and/or knowledge of the Communications, which are protected from disclosure pursuant to the attorney-client privilege[.]" Paragraph 15 of the Amended Complaint alleges, "Days before Bernstein's operation, Schulman and his Human Resources manager,

15

Jennifer Calderon, began to consult an attorney regarding Bernstein's employment." Because the Court has found that the related documents are not protected by the attorney-client privilege, the same would have eventually been produced in discovery. Therefore, the Court denies this request.

**5. Request for order precluding plaintiff's claim that defendant began to consult an attorney after learning plaintiff had cancer**

The Court denies this request for the reasons articulated above with respect to defendant's fourth request. The denial of this request does not foreclose defendant from filing a motion in limine or seeking a limiting instruction at trial.

**6. Request for attorneys' fees and leave to initiate separate action**

In light of the findings made above, the Court declines to award defendant attorney's fees incurred in bringing this motion.

On the current record, the Court further declines without prejudice to authorize the defendants to "initiate separate action(s) to enforce Mafcote's rights against the person(s) who stole, accessed and/or misused its computer system information in violation of Connecticut General Statutes § 53a-251 and barring any claim against Mafcote, for retaliation or otherwise, associated therewith[.]" The Court further notes that a motion for protective order is not the proper vehicle by which to request such relief.

**IV.** <u>**CONCLUSION**</u>

For the reasons stated, defendant's motion for protective order [Doc. #71] is **DENIED**.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 2nd day of September 2014.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE