UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM R. BERNSTEIN, : | |
|     Plaintiff, : | |
| : | |
| v. : | 3:12-cv-00311-WWE |
| : | |
| MAFCOTE, INC., : | |
|     Defendant. : | |

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this action, plaintiff William Bernstein alleges that his former employer terminated his employment after he was diagnosed with lung cancer in violation of federal and state laws forbidding (1) disability discrimination and (2) retaliation for opposing such unlawful practices. Plaintiff alleges violation of the American's with Disabilities Act ("ADA") (Counts I and II) and the Connecticut Fair Employment Practices Act ("CFEPA") (Counts III and IV). Defendant Mafcote has filed a motion for summary judgment on all four counts. For the following reasons, defendant's motion will be denied.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving

party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

ADA discrimination and retaliation claims are subject to the familiar McDonnell Douglas burden-shifting paradigm.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, (1973).  If a plaintiff establishes a *prima facie* case of discrimination, the employer may rebut that case by introducing evidence of a non-discriminatory reason for its actions.  Ultimately, the plaintiff must carry the burden of persuasion by demonstrating that the proffered reason is a pretext for actual discrimination.  Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 169 (2d Cir. 2006).

"To establish a prima facie case [of discrimination] under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability."  Id.

"To establish a prima facie case of retaliation under the ADA, a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999).

Defendant argues that plaintiff has failed both to establish a *prima facie* case of disability

2

discrimination and to demonstrate that defendant's legitimate reason for terminating him was pretextual. Defendant further argues that plaintiff cannot establish a case of retaliation because it contends that plaintiff did not engage in protected activity. The Court finds that defendant's motivation for terminating plaintiff is a material factual issue genuinely in dispute and that plaintiff may have engaged in protected activity by complaining about his perceived mistreatment to management and HR.

Plaintiff testified that after developing a chronic cough and a cancerous lung tumor, defendant's CEO, Steven Schulman, avoided him in the office, ostracized him, harangued him over various business issues without cause, attempted to drastically reduce his salary as a ploy to force him to quit and remove him from payroll while he was recuperating from cancer surgery.

Schulman's own secretary at the time testified that she saw several emails authored by Schulman which openly discussed Schulman's plans to discharge plaintiff due to his age, health, and illness. Numerous other Mafcote employees testified that Schulman was a well-known germaphobe and that Schulman began avoiding plaintiff after plaintiff developed a cough. Plaintiff testified that during the relevant period of time, Schulman treated plaintiff like a pariah, refusing to see him.

Defendant argues that it advertised plaintiff's position in order to find a replacement *before* it learned of plaintiff's illness, but defendant's former Human Resources Manager testified that the actual position that defendant advertised was not plaintiff's position and that Schulman expressly acknowledged as much. Defendant responds that it is normal custom and practice to use false job descriptions and false job titles in soliciting new employees. Resolution of this type of disputed issue requires the kind of credibility assessment appropriate for a jury.

After he returned from his operation, plaintiff recalls a number of fellow employees

approached him to indicate that they had heard that Schulman was trying to get rid of him due to his cancer.  Defendant was apparently aware of such rumors, as it circulated a memo to general distribution.  The memo provides:

> **There have been some rumors regarding William Bernstein, VP of Finance. Will has had some disputes with the company having nothing to do with business or health issues.**
>
> **Currently, he is remaining in his current position on a temporary basis.**
>
> **Please continue to support Will as you have in the past.**

Plaintiff testified that he asked Schulman why he was being targeted.  Plaintiff also testified that he "went to Jennifer Calderon, who is the HR manager, and asked her why [Schulman] was treating me this way, why I was being targeted."  "The Second Circuit has indicated that protected activities include both formal and informal complaints to management, where the plaintiff has a good faith, reasonable belief that the underlying challenged actions of the employer violated the ADA."  Hopkins v. New England Health Care Employees Welfare Fund, 985 F. Supp. 2d 240, 254 (D. Conn. 2013).  Accordingly the Court finds that plaintiff's complaints to management and HR, if proved, constitute protected activities.

Plaintiff testified that after he learned of his termination, he requested a simple letter of termination from defendant.  Plaintiff further testified that Schulman not only refused that request, but also threatened to block plaintiff's receipt of unemployment insurance unless plaintiff signed a document holding defendant harmless for wrongful termination.

Indeed, defendant fought to prevent plaintiff from receiving unemployment benefits.  Defendant unsuccessfully appealed the Department of Labor's award of benefits

twice.  The Decision of the State of Connecticut Employment Security Appeals Referee found that defendant's witness and Human Resources Manager, Jennifer Calderon, failed to identify wilful deliberate misconduct to support defendant's contention that plaintiff was ineligible for benefits.  After defendant appealed the administrator's original decision that found plaintiff eligible for benefits, the Appeals Referee held that "Calderon credibly testified that [plaintiff] did not violate [defendant's] rules or policies.  Calderon further testified that [defendant] did not have any problems with [plaintiff's] job performance."  Apparently, defendant's accusation of misconduct stemmed from plaintiff's refusal to accept a lower salary.  The Appeals Referee held that "[plaintiff's' decision not to accept [defendant's] offer(s) during their contract negotiations does not constitute wilful deliberate misconduct in the course of employment."

     Defendant's proffered legitimate business reason for terminating plaintiff's employment is that it wanted to "reduce the compensation paid to a person in plaintiff's position."  Nevertheless, fewer than three months after plaintiff's termination, defendant consulted search firms to determine the appropriate salary for someone to fill the position of "Treasurer," the position for which plaintiff originally interviewed in 2008.  Chad Laskey, Placement Coordinator for Hamilton Connections, informed defendant that the appropriate compensation for someone with 20 years of experience (which plaintiff exceeded) would be $150,000 to $175,000 per year.  Plaintiff was making $150,000 when his employment was terminated.  When pressed as to why defendant was soliciting candidates for a treasurer position so soon after plaintiff's termination and inquiring as to what an appropriate compensation level would be for someone with skills similar to plaintiff's, Calderon testified as follows:

> Q: So you're doing this for no real reason whatsoever; is that your testimony?
>
> A: I'm sure there was a reason at the time.
>
> Q: Which was that you were looking to hire someone for a treasurer position, I assume; correct?
>
> A: No.
>
> Q: That's what you're saying in your own email? You said we are considering creating a new position; that's a treasurer position, correct?
>
> A: That's what it says, yes.

Given these contested issues of material fact, the Court finds that plaintiff may be able to demonstrate that defendant's "proffered explanation lacking a factual basis is a pretext." See Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 258 (1981). Accordingly, plaintiff's ADA claims will not be dismissed. Moreover, "it is clear that [plaintiff's] disability discrimination claims under CFEPA, the standard for which is not as stringent as the ADA, should also survive." Young v. Precision Metal Products, Inc., 599 F. Supp. 2d 216, 228 (D. Conn. 2009).

## CONCLUSION

In a discrimination case, where material issues of intent and state of mind are in dispute, summary judgment is not appropriate. See Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). Accordingly, defendant's motion for summary judgment [Doc. #155] is DENIED.

Dated this 4th day of September, 2015, at Bridgeport, Connecticut.

/s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE